Tina Wolfson, SBN 174806
twolfson@ahdootwolfson.com
Robert Ahdoot, SBN 172098
rahdoot@ahdootwolfson.com
AHDOOT & WOLFSON, P.C.
10850 Wilshire Boulevard, Suite 370
Los Angeles, California 90024
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

Michael F. Ram, SBN 104805
mram@rocklawcal.com
J. Kirk Boyd, SBN 122759
kboyd@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI
555 Montgomery Street, Suite 820
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

E-filing          DMR

Attorneys for Plaintiff,
RANDY BOYSEN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY BOYSEN, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>      v.<br><br>WALGREEN CO., an Illinois Corporation d.b.a. WALGREENS; and DOES 1-10, inclusive,<br><br>       Defendants. | CV 11 6262<br><br>CLASS ACTION<br><br>CLASS ACTION COMPLAINT FOR:<br><br>1. Violations of the Unfair Competition Law, California Business and Professions Code Sections 17200 *et seq.*/Unfair, Unlawful and Deceptive Business Practices;<br><br>2. Violations of the Unfair Competition Law, California Business and Professions Code Section 17500 *et seq.*/False or Misleading Advertising;<br><br>3. Breach of Implied Warranty;<br><br>4. Unjust Enrichment.<br><br>DEMAND FOR JURY TRIAL |

FILED BY FAX
PURSUANT TO LOCAL RULES

COMPLAINT

Plaintiff Randy Boysen ("Plaintiff") brings this action against Defendant Walgreen Co., and Does 1 through 10 (collectively, "Defendant") on behalf of himself and all others similarly situated, and makes the following allegations upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record:

## PRELIMINARY STATEMENT

1.     Plaintiff files this class action to cause Defendant to disclose the presence of dangerous substances in its juice products sold throughout the United States and consumed by adults, and, more frequently, children, and to restore monies to the consumers who purchased the products during the time that Defendant failed to make such disclosures.

2.     Defendant manufactures, markets, distributes, and sells "Walgreens 100% Grape Juice" and "Walgreens 100% Apple Juice" (the "Contaminated Juices").

3.     The Contaminated Juices contain material and significant levels of arsenic and lead, which are carcinogens and developmental toxins known to cause health problems to consumers, especially children.  Exposure to arsenic and lead in food or liquids over time, unlike many other poisons, causes cumulative build up of these toxins in the body.  Build up can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

4.     Defendant has advertised and sold the Contaminated Juices without any label or warning indicating to consumers that these products contain arsenic and lead, or that one or both of these toxins can over time accumulate in the drinker's body to the point where lead and/or arsenic poisoning, injury and disease, including cancer, will occur.

5.     Defendant's omissions are false, misleading, and reasonably likely to deceive the public, especially in the light of Defendant's affirmative representations that imply that the Contaminated Juices are healthy and safe.

6.     Consumers, in purchasing Contaminated Juices, for themselves and their families, reasonably expect and anticipate that these products are healthy and safe. Non-disclosure and concealment of lead and arsenic in Contaminated Juices by Defendant is intended to and does in fact cause consumers to purchase a product Plaintiff and the class would not have bought had disclosure been made.  As a result of its omission and concealment, Defendant has generated substantial sales of the Contaminated Juices.

7.     Plaintiff brings this action on behalf of himself and other similarly situated consumers within the United States who purchased the Contaminated Juices, in order to cause the disclosure of the presence of material and significant levels of arsenic and lead in the Contaminated Juices, to correct the false and misleading perception Defendant has created in the minds of consumers that the Contaminated Juices are safe and healthy for themselves and their families, and to obtain redress for those who have purchased the Contaminated Juices.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction in this action under 28 U.S.C. Section 1332(d)(2)(A) because this is a class action in which the matter in controversy exceeds $5,000,000 and Plaintiff and members of the Class are not citizens of Illinois, Defendant's state of citizenship.

9.     This Court has personal jurisdiction over Defendant because Defendant has conducted and does conduct business within the State of California and within this judicial district.

10.     Venue is proper under 28 U.S.C. Section 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES

11.     At all times relevant to this matter, Plaintiff RANDY BOYSEN resided and continues to reside in San Francisco County.  During the class period defined

below, Plaintiff purchased the Contaminated Juices in reliance on the omission and concealment of warnings regarding the presence and levels of arsenic and lead, and suffered injury in fact and lost money as a result of the unfair competition and material omissions described in this Complaint.

12.    Defendant WALGREEN CO. (doing business as "Walgreens") is incorporated in the State of Illinois and is headquartered in Deerfield, Illinois. Defendant is registered to do business in the State of California, and does business in the State of California. Defendant sells the Contaminated Juices in its stores and online.

13.    The true names and capacities, whether individual, corporate, associate or otherwise, of each of the Defendants designated as a DOE are unknown to Plaintiff at this time and therefore Plaintiff sues Defendants by such fictitious names. Plaintiff will ask leave of the Court to amend this Complaint to show the true names and capacities of the DOE Defendants when that information has been ascertained. Plaintiff is informed and believes that each of the Defendants designated here as a DOE is legally responsible in some manner and liable for the events and happenings alleged in this Complaint and, in such manner, proximately caused harm to Plaintiff as here alleged.

## SUBSTANTIVE ALLEGATIONS

I.    **Arsenic and Lead are Hazardous Carcinogens and Developmental Toxins Which Cause Severe Health Problems.**

14.    Arsenic is a metallic substance used in agricultural insecticides. Use in United States agriculture for human consumption has been banned. Arsenic and many of its compounds are poisonous to humans. Arsenic, unlike many other poisons, builds up in the body over time as the person is exposed to and ingests it, resulting in a cumulative exposure which can, over time, become toxic and seriously injurious to health. Metabolic interferences caused by acute or chronic exposure to arsenic can lead to death from multi-system organ failure.

15. Arsenic and arsenic compounds are classified as Group 1 Carcinogens by the International Agency for Research on Cancer ("IARC").

16. The State of California has included arsenic (inorganic arsenic compounds) as a known carcinogen and arsenic (inorganic oxides), as a developmental toxin, on the Proposition 65 list, pursuant to The Safe Drinking Water and Toxic Enforcement Act of 1986.

17. The Food and Drug Administration ("FDA") has set standards that regulate the maximum parts per billion ("ppb") or arsenic permissible in water: bottled water cannot contain more than 10 ppb of total arsenic. *See* 21 C.F.R. 165.110(b)(4)(iii)(A).

18. Lead is a metallic substance formerly used as a pesticide in fruit orchards, but the use of such pesticides is now prohibited in the United States. Lead, unlike many other poisons, builds up in the body over time as the person is exposed to and ingests it, resulting in a cumulative exposure which can, over time, become toxic and seriously injurious to health. Lead is an especially poisonous metal for children, as exposure can cause severe nervous system damage. Lead exposure can also cause blood and brain disorders. Lead poisoning can occur from ingestion of food or water containing lead. Acute or chronic exposure to material amounts of lead can lead to severe brain and kidney damage in adults and children, miscarriages, as well as reduced fertility in males, and ultimately cause death.

19. The State of California has included lead as a known carcinogen and developmental toxin on the Proposition 65 list, pursuant to The Safe Drinking Water and Toxic Enforcement Act of 1986.

20. The FDA has set standards that regulate the maximum parts per billion ("ppb") of lead permissible in water: bottled water cannot contain more than 5 ppb of total lead. *See* 21 C.F.R. 165.110(b)(4)(iii)(A).

////

////

**II.    Defendant's Grape Juice and Apple Juice Contain Dangerously High Levels of Arsenic and Lead.**

21.    Defendant's "100% Grape Juice" contains up to 24.7 ppb of total arsenic, up to 20.48 ppb of total inorganic arsenic, and up to 15.9 ppb of total lead.

22.    Defendant's "100% Apple Juice" contains up to 6.94 ppb of total lead.

23.    These levels are significantly higher than the FDA limits for bottled water: 10 ppb of total arsenic and 5 ppb of total lead.  *See* 21 C.F.R. 165.110(b)(4)(iii)(A).

**III.   Defendant's Deceptive Omissions.**

24.    Defendant manufactures, markets, distributes, and sells the Contaminated Juices with the following labels, which fail to disclose and omit the presence of lead or arsenic, or the serious health concerns associated with arsenic or lead ingestion:

 

6

25.   In addition to the "Heart Healthy" logo (see above image) on Defendant's labeling of its Grape Juice product, Defendant's website provides the following description of its Grape Juice, which fails to disclose the presence of lead or arsenic, or the significant health concerns associated with ingestion of lead or arsenic:

100% juice from concentrate with added ingredients that helps promote a healthy heart.

- No sugar added
- Pasteurized
- 8 fl oz equals 3 fruit servings
- More than twice the antioxidant power of orange juice
- Gluten and lactose free
- Low sodium and vegan
- Diabetes exchange: 3 carbohydrates

Quality guaranteed.
Refrigerate after opening to maintain freshness. Chill and shake well before using.

(*See* http://www.walgreens.com/store/c/walgreens-juice/ID=prod6062108-product (last visited Dec. 11, 2011)).

26.   Defendant's website provides the following description of its Apple Juice, which fails to disclose the presence of lead or arsenic, or the significant health concerns associated with ingestion of lead or arsenic:

- No sugar added
- Pasteurized
- Contains 100% juice
- With added ingredients - no artificial preservatives, flavorings or colorings
- 130% vitamin C - vitamin C supports healthy immune system
- 8 fl. oz. = 2 fruit servings
- Gluten and lactose free
- Low sodium
- Vegan

Made in Argentina and China

Quality guaranteed
- Refrigerate after opening to maintain freshness
- Chill and shake well before using

(*See*

http://www.walgreens.com/store/store/product/view_product_details.jsp?vpd=true&id=prod6022494 (last visited Dec. 11, 2011)).

27.   Defendant omits from its labeling and online advertising that material and significantly high levels of arsenic and lead are present in these juice products. At the same time, Defendant utilizes marketing and advertising, including, without limitation, "100% juice," "No sugar added", "Heart Healthy," "no artificial preservatives, flavorings or colorings," "Gluten and lactose free," "Low sodium," "Vegan," and "More than twice the antioxidant power of orange juice," to imply that the Contaminated Juices are safe and healthy.

28.   As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the presence of arsenic and lead in the Contaminated Juices without conducting his or her own scientific tests, or reviewing third party scientific testing of these products.

29.   Defendant has reaped millions of dollars in profits by failing to disclose to consumers that the Contaminated Juices contain arsenic and lead, and leading consumers to believe that the Contaminated Juices are healthy juice beverages. Consumers would not have purchased the Contaminated Juices, had they known the truth: that the Contaminated Juices contain the material levels of arsenic and lead that they do.

## CLASS ACTION ALLEGATIONS

30.   Plaintiff incorporates by reference each former paragraph of this Complaint.

31.   Plaintiff brings this class action on behalf of himself and a class of all persons who purchased the Contaminated Juices in the United States (the "Class"). Excluded from the Class are Defendant, officers, directors, and employees of Defendant, any entity in which Defendant has a controlling interest, the affiliates, legal representatives, attorneys, heirs, and assigns of Defendant, any federal, state or local government entity, and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

32.   The members of the Class are so numerous that joinder of all members

**COMPLAINT**

1  would be impracticable.  Plaintiff reasonably estimates that there are thousands, if not

2  millions, of purchasers of the products at issue.

3      33.    This action satisfies the requirements of Federal Rule of Civil Procedure

4  23(b)(3) because it involves questions of law or fact common to the member of the

5  Class that predominate over any questions affecting only individual members,

6  including:

7      a.    Whether Defendant violated California Business & Professions Code

8            Section 17200, *et seq.* and Section 17500, *et seq.*;

9      b.    Whether Defendant violated California Civil Code § 1750 *et seq.*;

10     c.    Whether Defendant initiated and thereafter maintained a deceptive

11           marketing campaign by failing to notify consumers of the arsenic and lead

12           content in the Contaminated Juices;

13     d.    Whether, by its misconduct as set forth here, Defendant has engaged in

14           unfair or unlawful business practices;

15     e.    Whether, by its misconduct as set forth here, Defendant has engaged in

16           unfair, deceptive, untrue, or misleading advertising;

17     f.    Whether Defendant has been unjustly enriched;

18     g.    Whether Defendant has breached an implied warranty;

19     h.    Whether the members of the Class have been injured by Defendant's

20           conduct;

21     i.    Whether Plaintiff and the Class are entitled to relief, and the amount and

22           nature of such relief; and

23     j.    Whether Plaintiff and Class members are entitled to declaratory and

24           injunctive relief.

25     34.    The claims of the Plaintiff class representative are typical of the claims of

26  the members of the Class.  Plaintiff has no interests antagonistic to those of the Class

27  and Defendant has no defenses unique to Plaintiff.

28     35.    Plaintiff will fairly and adequately protect the interest of the class and has

**COMPLAINT**

1  retained attorneys experienced in class and complex litigation.

2      36.    A class action is superior to all other available methods for the fair and

3  efficient adjudication of this controversy because it is economically impractical for

4  members of the Class to prosecute individual actions, the Class is readily definable,

5  and prosecution as a class action will eliminate the possibility of repetitious litigation.

6      37.    A class action will cause an orderly and expeditious administration of the

7  claims of the Class.  Economies of time, effort and expense will be fostered and

8  uniformity of decisions will be ensured.

9      38.    Plaintiff does not anticipate any undue difficulty in the management of

10  this litigation.

11      39.    Plaintiff and the Class expressly exclude any claims for bodily harm or

12  personal injury arising from Defendant's conduct.

13                        **FIRST CAUSE OF ACTION**

14  **(Violation of Business & Professions Code §17200, *et seq.*/Unfair, Unlawful and**
    **Deceptive Business Practice)**

15

16      40.    Plaintiff incorporates by reference each former paragraph of this

17  Complaint.

18      41.    Plaintiff brings this cause of action on behalf of himself and on behalf of

19  the Class.

20      42.    Plaintiff has suffered injury in fact and lost money or property as a result

21  of Defendant's conduct because he purchased the Contaminated Juices in reliance on

22  Defendant's material omissions.

23      43.    Defendant has engaged in unfair, unlawful, and fraudulent business acts

24  and practices as set forth above.

25      44.    By engaging in the above-described acts and practices, Defendant has

26  committed one or more acts of unfair competition within the meaning of the Unfair

27  Competition Law, Business and Professions Code §17200 *et seq.*, which prohibits any

28  "unlawful," "fraudulent," or "unfair" business act or practice and any false or

1 | misleading advertising.

2 |     45.    Defendant engaged in "unfair" business acts or practices by disseminating

3 | a false and/or misleading marketing campaign as described above. Defendant's false

4 | and/or misleading advertising and non-disclosure harms consumers, and there is no

5 | corresponding benefit to consumers that outweighs this harm.

6 |     46.    Defendant engaged in "fraudulent" business acts or practices by

7 | disseminating a false and/or misleading marketing campaign and non-disclosure as

8 | described above.

9 |     47.    Defendant's acts and practices have deceived, and are likely to deceive,

10 | members of the consuming public.

11 |     48.    Defendant engaged in "unlawful" acts and practices because its actions as

12 | alleged here violate, at a minimum, Civil Code §§ 1770(a)(5), 1770(a)(7), 1770(a)(9),

13 | 1770(a)(16), and Business and Professions Code §17500 *et seq*.

14 |     49.    Plaintiff and Class members relied on Defendant's omissions.

15 |     50.    Defendant's violation of §17200 continues. As a direct and proximate

16 | result of Defendant's violations, Plaintiff and members of the Class were injured in

17 | fact and lost money or property. Plaintiff has suffered actual damages in that he paid

18 | money to purchase the Contaminated Juices, which he would not have done had

19 | Defendant not engaged in the false and misleading advertising.

20 |     51.    Plaintiff, on behalf of himself and on behalf of each member of the Class,

21 | seeks restitution, injunctive relief, and other relief allowed under §17200, *et seq*.

22 | **SECOND CAUSE OF ACTION**

23 | **(Violation of Business & Professions Code § 17500 *et seq*./False or Misleading**

24 | **Advertising)**

25 |     52.    Plaintiff incorporates by reference each former paragraph of this

26 | Complaint.

27 |     53.    Plaintiff brings this cause of action on behalf of himself and on behalf of

28 | the Class.

**COMPLAINT**

54.   Defendant has advertised and marketed to the public and offered for sale the Contaminated Juices on a nationwide basis, and throughout California.

55.   Defendant has engaged in the advertising and marketing alleged here with intent to directly and indirectly induce the purchase of the Contaminated Juices.

56.   Defendant's advertisements omitted and failed to warn consumers of the dangerous substances in the Contaminated Juices and were likely to deceive the public and have deceived the public by omitting the characteristics of the Contaminated Juices, and by failing to disclose the significant health risks associated with consuming the Contaminated Juices, as set forth more fully above.

57.   In omitting and concealing this information from consumers as part of their marketing and advertising campaign, Defendant knew or should have known that the omissions were untrue or misleading, and acted in violation of the Business and Professions Code § 17500, *et seq.*

58.   Plaintiff and Class members relied on Defendant's omissions.

59.   The non-disclosures by Defendant of the facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §17500, *et seq.*

60.   Plaintiff based his decision to purchase the Contaminated Juices in substantial part on Defendant's omitted material facts.  Defendant has reaped millions of dollars of revenues through the sale of the Contaminated Juices as a result of the false and misleading advertisements containing the non-disclosures, with the understanding and awareness that disclosure of the true facts would have prevented plaintiff and reasonable consumers from purchasing Defendant's Contaminated Juices. Plaintiff and the Class were injured in fact and lost money or property as a result of Defendant's wrongful conduct.

61.   Plaintiff, on behalf of himself and the Class, seeks restitution, injunctive relief and other relief allowable under §17500, *et seq.*

### THIRD CAUSE OF ACTION

### (Breach of Implied Warranty)

62.     Plaintiff incorporates by reference each former paragraph of this Complaint.

63.     Plaintiff brings this claim individually and on behalf of the Class.

64.     Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased the Contaminated Juices.

65.     The terms of that contract included the implied promises of merchantability that (1) the product was fit for the ordinary purpose for which it was intended, i.e., human consumption, and (2) the product was adequately contained, packaged, and/or labeled.

66.     The terms of the contract also included an implied promise of fitness for a particular purpose, i.e., human consumption, in which Defendant had reason to know the particular purpose for which Plaintiff and Class members required the juice products and Plaintiff and Class members relied on Defendant's skill and judgment to select and furnish suitable products that were fit for that purpose.

67.     These implied warranties became part of the basis of the bargain, and were part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

68.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

69.     Defendant breached the terms of this contract with Plaintiff and the Class, including the implied warranties of merchantability and fitness for a particular purpose, by not providing juice products that were fit for the purpose of human consumption and were inadequately labeled and advertised due to Defendant's failure to disclose the products' arsenic and lead content.

70.     As a result of Defendant's breach of its contract, Plaintiff and the Class

1    have been damaged in the amount of the purchase price of the Contaminated Juices
2    they purchased.

**FOURTH CAUSE OF ACTION**

**(Unjust Enrichment)**

5         71.    Plaintiff incorporates by reference each former paragraph of this
6    Complaint.

7         72.    Plaintiff brings this claim individually and on behalf of the Class.

8         73.    Defendant sold the Contaminated Juices based on false and misleading
9    advertising, including failure to disclose material facts, as stated more fully above.

10        74.    Defendant has been unjustly enriched by collecting the price of the
11   Contaminated Juices, which consumers paid in reliance on Defendant's false and
12   misleading advertising.

13        75.    Plaintiff, on behalf of himself and the Class, seeks restitution of the full
14   price of all Contaminated Juices purchased by members of the Class.

**PRAYER FOR RELIEF**

16        Plaintiff, on behalf of himself and all others similarly situated, prays for
17   judgment against Defendant as follows:

18        A.    An order certifying this case as a class action and appointing Plaintiff and
19   his counsel to represent the Class;

20        B.    Individual restitution to Plaintiff and each member of the Class;

21        C.    Actual, statutory, and punitive damages;

22        D.    An order requiring Defendant to immediately cease its wrongful conduct
23   as set forth above, and to remedy that conduct, including by way of a corrective
24   advertising campaign;

25        E.    For reasonable attorneys' fees and the costs of this action;

26        F.    For statutory pre-judgment interest; and

27        G.    For such other relief as this Court may deem just and proper.

28

14

**COMPLAINT**

1

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of his claims to the extent authorized by law.

Dated:     December 13, 2011     AHDOOT & WOLFSON, P.C.

By: _____
      Tina Wolfson

Attorneys for Plaintiff,
RANDY BOYSEN

COMPLAINT